IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DAWN DEE WALDRON,

        Plaintiff,

v.                                No. 1:18-cv-00398-KRS

ANDREW SAUL,[1]
Commissioner of Social Security,

        Defendant.

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO REVERSE AND REMAND

Plaintiff seeks review of the Commissioner's determination that she is not entitled to disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73(b), the Court has considered Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 16), filed September 28, 2018, the Commissioner's response in opposition (Doc. 20), filed November 30, 2018, and Plaintiff's reply (Doc. 24), filed January 14, 2019. Having so considered, the Court FINDS and CONCLUDES that Plaintiff's motion should be GRANTED.

### I. PROCEDURAL BACKGROUND

On November 12, 2014, Plaintiff filed an application for Social Security disability insurance benefits, alleging that she had been disabled since October 1, 2014, due to back and hip pain; neuropathy pain; Type 2 diabetes; depression; OCD; anxiety disorder; sleep apnea;

---

[1] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019, and is substituted as a party pursuant to Fed. R. Civ. P. 25(d).

insomnia; dyslexia; headaches; and ulcers. (AR 203, 218). Her application was denied at both the initial and reconsideration levels of review, and a subsequent hearing before administrative law judge ("ALJ") Michael Leppala again ended in a denial. (AR 26, 102-03).

In making his decision, ALJ Leppala engaged in the required five-step disability analysis,[2] first finding that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of October 1, 2014.[3] (AR 18). At step two, ALJ Leppala found that Plaintiff had the severe impairments of diabetes mellitus, obesity, affective disorder, and anxiety. (*Id.*). At step three, the ALJ determined that none of Plaintiff's impairments, whether alone or in combination, met or medically equaled the severity of a listed impairment. (AR 19).

ALJ Leppala next assessed Plaintiff's Residual Functional Capacity ("RFC"),[4] finding that Plaintiff had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b). The Claimant is capable of lifting and or carrying 20 pounds occasionally and 10 pounds frequently; sitting for about 6 hours in an 8-hour workday, and standing and/or walking about 6 hours in an 8-hour workday, with normal breaks. The Claimant would be capable of performing simple tasks with routine supervision, and of interacting appropriately with coworkers and supervisors for incidental work purposes, but should have only occasional contact with the public.

(AR 20-21).

At the time of his RFC determination, ALJ Leppala had before him evidence in the form of, inter alia, Plaintiff's testimony, medical records and opinion statements provided by Plaintiff's treating psychiatrist, Ariadna Sadziene-Bessinger, MD, and primary care provider, Physician Assistant ("PA") Mark A. Limback, and disability assessments conducted by non-

---

[2] *See* 20 C.F.R. § 404.1520 (outlining the five-step analysis).
[3] The ALJ also determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. (AR 18).
[4] The RFC gauges "what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). *See also* 20 C.F.R. § 404.1545(a)(1).

examining state agency consultants at the initial and reconsideration levels of review. As is relevant here, Plaintiff testified that she is unable to work due to a variety of mental health challenges as well as neuropathic, osteoarthritic, and migraine pain. Similarly, both of Plaintiff's medical providers completed medical source statements wherein they opined that Plaintiff's mental and physical illnesses resulted in multiple functional limitations.[5]

In this regard, Dr. Sadziene-Bessinger determined that Plaintiff had marked limitations in her abilities to maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance and be punctual; maintain physical effort for long periods; work in coordination with/or in proximity to others; complete a normal workday/workweek without interruptions from pain or fatigue based symptoms; to perform at a consistence pace without unreasonable rest periods; carry out detailed instructions; interact appropriately with the general public; ask simple questions or request assistance; respond appropriately to changes in the work place; travel in unfamiliar places; and set realistic goals or make independent plans. (AR 663-65).

Dr. Sadziene-Bessinger further noted that Plaintiff was moderately limited in her abilities to remember locations and work-like procedures; understand, remember, and carry out very short and simple instructions; sustain an ordinary routine without special supervision; make simple work-related decisions; accept instructions and respond appropriately to criticism from supervisors; maintain socially appropriate behavior; and be aware of normal hazards and take adequate precautions. (AR 664-65). She also determined that Plaintiff met the criteria for the listings of affective and anxiety-related disorders. (AR 666-67).

---

[5] Plaintiff's providers completed questionnaires in both 2015 and 2017. Although the Court has considered all four of the questionnaires, the below noted opinions were sourced from the providers' 2017 questionnaires.

PA Limback, in turn, opined that Plaintiff had severe pain which caused marked limitations in her abilities to maintain regular attendance; maintain physical effort for long periods; and to complete a normal workday/workweek, and moderate limitations in terms of maintaining attention and concentration; performing activities within a schedule; and working in coordination with/or proximity to others. (AR 659).

In contrast, the agency consultants who examined Plaintiff's medical records at the initial and reconsideration levels of review did not assess Plaintiff with any marked limitations. And, at the reconsideration level of review, the consultants developed an RFC assessment that virtually mirrors ALJ Leppala's RFC determination. (AR 90-101, 104-116). Predictably, then, ALJ Leppala gave "little weight" to Dr. Sadziene-Bessinger's opinions, "some weight" to PA Limback's opinions, and "great weight" to the agency consultants' administrative findings. (AR 23-24). ALJ Leppala also dismissed Plaintiff's testimony with the stock phrase that "Claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the…evidence in the record."[6] (AR 23).

With Plaintiff's RFC assessment in hand, the ALJ proceeded to steps four and five where, with the help of a vocational expert, he determined that Plaintiff could not perform her past relevant work but that she could perform the requirements of representative occupations such as marker and photocopy machine operator. (AR 26). Accordingly, ALJ Leppala concluded that Plaintiff was not disabled. (*Id.*). The ALJ's decision became final when, on March 2, 2018, the Appeals Council denied Plaintiff's request for review. (AR 1). *See Sims v. Apfel*, 530 U.S. 103,

---

[6] It is worth mention that, at one point, the ALJ states that "the objective evidence does establish impairments that are reasonably expected to give rise to limitations of the nature and severity alleged." (AR 23). Although the ALJ's surrounding statements show that this statement was written in error, it is, nonetheless, a troubling inclusion in the ALJ's decision.

106–07 (2000) (explaining that if the Council denies a request for a review, the ALJ's opinion becomes the final decision). *See also* 20 C.F.R. § 404.900(a)(1)-(5).

Plaintiff now asks the Court to reverse the Commissioner's decision, arguing that ALJ Leppala (1) improperly assessed the opinion evidence submitted by Dr. Sadziene-Bessinger and PA Limback, and (2) failed to consider her subjective allegations of pain and other symptoms in accordance with *Luna v. Bowen*, 843 F.2d 161 (10th Cir. 1987). Plaintiff concludes that these alleged errors resulted in an unsubstantiated RFC determination.

## II. STANDARD

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). *See also* 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). The Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* at 1262. Additionally, "[f]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation omitted). Even so, it is not the function of the Court to review Plaintiff's claims de novo, and the Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

Having meticulously combed the record, the Court finds that the ALJ failed to evaluate properly the medical opinions of record. Because the weight assigned to this evidence sets the tone for evaluating the remaining evidence, the Court cannot conclude that the ALJ's decision is based on substantial evidence and it will reverse on this ground. The Court will only reach Plaintiff's specific contentions to the extent relevant, and it will not reach Plaintiff's *Luna* challenge or arguments concerning PA Limback as they "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### III. ANALYSIS

It is beyond dispute that an ALJ is required to consider and weigh every opinion contained in the record. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012); 20 C.F.R. § 404.1527(c). In determining what weight to give to an opinion, the ALJ evaluates several factors including, inter alia, the supportability and consistency of the opinion. 20 C.F.R. § 404.1527(c)(1)-(6). The ALJ need not expressly consider all of the relevant factors, but his or her decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the…medical opinion and the reasons for that weight." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (quotation omitted).

Generally speaking, medical opinions from a claimant's treating physician should be given controlling weight if they are well-supported and consistent with the other substantial evidence of record, *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003), whereas "the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). If a treating physician's medical opinion is not given controlling weight, the opinion is still entitled to deference and it must be weighed using the factors set forth in 20 C.F.R. § 404.1527(c)(2)(i)-(c)(6). In these

circumstances, the ALJ is also required to weigh the prior administrative medical findings in accordance with 20 C.F.R. § 404.1527(c), and explain in his decision the weight he ultimately assigns to this evidence. *See* SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)[7] (explaining that ALJs may not ignore agency experts' findings and must explain in their decisions the weight given to the opinions). *See also* 20 C.F.R. § 404.1527(e) (stating that an explanation is not required if the ALJ gives controlling weight to a treating source's medical opinion).

The only medical opinions of record relevant to this analysis are found in the medical source statements provided by Dr. Sadziene-Bessinger and the assessments provided by the state agency consultants.[8] *See* SSR 06-03p, 2006 WL2329939, at *2 (August 9, 2006)[9] (explaining that for claims filed prior to March 27, 2017, only "acceptable medical sources," such as licensed physicians, can give medical opinions, establish the existence of a medically determinable impairment, and be considered treating sources).[10] As discussed above, ALJ Leppala gave "little weight" to Dr. Sadziene-Bessinger's opinions and "great weight" to the findings made by the non-examining state agency consultants. However, the ALJ failed to engage in a proper analysis of this evidence and thus the Court is unable to follow the ALJ's reasoning or otherwise determine that the ALJ's decision is supported by substantial evidence.

---

[7] Rescinded by Federal Register Notice Vol. 82, No. 57, page 15263. Rescission effective for claims filed on or after March 27, 2017.

[8] Findings of fact made by agency physicians at the initial and reconsideration levels of review "become opinions at the administrative law judge and Appeals Council levels of administrative review." SSR 96-6p, 1996 WL 374180, at *2. Similarly, RFC assessments made by "State agency medical or psychological consultants or other program physicians or psychologists are to be considered and addressed in the [ALJ's] decision as medical opinions from non-examining sources about what the individual can still do despite his or her impairment(s)." *Id.* at *4.

[9] Rescinded by Federal Register Notice Vol. 82, No. 57, page 15263. Rescission effective for claims filed on or after March 27, 2017.

[10] At the time of the ALJ's decision, licensed physicians, such as Dr. Sadziene-Bessinger and the agency consultants, qualified as "acceptable medical sources" whereas physicians assistants, including PA Limback, were considered "non-acceptable medical sources" (hereinafter "other sources"). Even so, information from "other sources" "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL2329939, *2. As stated above, the Court does not reach Plaintiff's arguments as to PA Limback.

Dr. Sadziene-Bessinger began treating Plaintiff in 2010, and the medical evidence of record indicates that the treating relationship continued for more than six years. *See, e.g.*, AR 310, 491-92, 528-30, 637. Yet, in just two sentences, ALJ Leppala rejected Dr. Sadziene-Bessinger's opinions on the grounds that "the [doctor's] treatment notes from 2015 to 2016 consistently indicate normal psychological status" and that Plaintiff's GAF scores were in the mid to high 50s and 60s which "suggest that the severity of [Plaintiff's] mental impairment was mild to moderate, and certainly not disabling." (AR 24). This truncated, vague explanation is void of any indication that ALJ Leppala considered Dr. Sadziene-Bessinger's findings in accordance with 20 C.F.R. § 404.1527(c)(1)-(6).

While supportability is one factor to consider when weighing evidence, see 20 C.F.R. § 404.1527(c)(3), ALJ Leppala never explains why he places such significance on Plaintiff's GAF scores. *See, e.g.*, *Watts v. Berryhill*, 705 F. App'x 759, 762 (10th Cir. 2017) (unpublished) (accepting an ALJ's rejection of GAF scores on the ground that the ALJ provided a good reason for so doing and noting that the Commissioner "has declined to endorse the use of GAF scores for use in disability determinations"). He also fails to cite to the treatment notes which he believes "indicate normal psychological status." This is particularly puzzling given that throughout 2015—the timeframe to which ALJ Leppala references—as well as 2016, Plaintiff actually presented with increased symptoms and received additional diagnoses.

The following excerpts from Dr. Sadziene-Bessinger's 2015 and 2016 treatment notes both illustrate these increases and demonstrate that the doctor consistently reported that Plaintiff suffered from multiple psychological disorders and related symptoms.

**January 28, 2015 and March 31, 2015**: "The patient presents in her usual ten[se], quite distraught, depressed, ruminating and despondent state." Listed disorders include OCD; depression, major, recurrent; and anxiety disorder, generalized. (AR 525, 528).

**April 28, 2015**: "The patient presents in more tense, distraught, depressed, ruminating and despondent state than she had ever been in the past, is extremely shaky and hypervigilant, appears very lost and disconnected (most likely due to surfaced PTSD symptoms)." Listed disorders include post-traumatic stress disorder ("PTSD"); OCD; depression, major, recurrent; and anxiety disorder, generalized. (AR 532).

**October 28, 2015**: "Ongoing severe depression, mood instability, irritability, anger (almost manic mixed or depressed rapid cycling presentation)…passively suicidal." Listed disorders include PTSD; OCD; Bipolar disorder, current episode depressed, severe; anxiety disorder, generalized. (AR 620).

**February 15, 2016**: "The patient again presents in extremely tense, distraught, depressed, tearful and despondent state, is lost, disconnected….Ongoing severe depression, mood instability, irritability, anger but less manic mixed or depressed rapid cycling." Listed disorders include PTSD; OCD; Bipolar disorder, current episode depressed, severe; anxiety disorder, generalized. (AR 625-26).

**August 3, 2016**: "The patient presents in baseline tense, distraught, depressed, tearful and despondent state….Severe mood instability, irritability, anger….May need hospitalization if not improving." Listed disorders include PTSD, chronic; OCD; Bipolar disorder, current episode depressed, severe; anxiety disorder, generalized, panic disorder without agoraphobia. (AR 632-34).

**November 10, 2016**: "[The patient's] condition remains significantly impaired." Listed disorders include PTSD, chronic; OCD; Bipolar disorder, current episode depressed, severe; anxiety disorder, generalized, panic disorder without agoraphobia. (AR 638, 640).

Further, the ALJ never discussed the reasoning Dr. Sadziene-Bessinger provided in support of her opinions. For example, the doctor explained that Plaintiff's "attention, concentration and focus are markedly impaired by her emotional problems of depression, mood swings, thought racing, OCD, anxiety and PTSD." (AR 663). She also noted that Plaintiff is "very forgetful," has difficulties "processing and retaining information," and has "severe social fears and avoidant personality traits….severe OCD symptoms…agoraphobia and panic attacks….[and] difficulties verbalizing her problems." (AR 634-65). It appears, then, that ALJ Leppala engaged in the prohibited "pick and choose" analysis, "using portions of evidence favorable to his position," *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004), while ignoring the bulk of Dr. Sadziene-Bessinger's opinion evidence and associated treatment notes.

Additionally, ALJ Leppala did not give deference to Dr. Sadziene-Bessinger's opinions but, instead, gave great weight to the findings made by the non-examining state agency consultants. Although the administrative findings comprise the varying opinions of four separate agency consultants, the ALJ adopted all of the opinions, without distinction, simply providing the blanket explanation that "[t]he consultants are experienced in the sequential evaluation process and familiar with Social Security rules and regulations, and the opinion is consistent with the overall evidence of record." (AR 24). Again, ALJ Leppala side-stepped the mandates of 20 C.F.R. § 404.1527(c)(1)-(6), and failed to provide the Court with any ascertainable reasons for his decisions with regard to the agency evidence.

The consultants' experience is but one reason an ALJ is required to consider the consultants' findings "as opinions of nonexamining physicians and psychologists." SSR 96-6p, 1996 WL 374180, *2. It does not serve as a substitute for a proper weight analysis. Further, because the ALJ determined that the opinions of the agency consultants were entitled to greater weight than the opinions of Plaintiff's treating psychiatrist, he was required to properly explain his underlying reasoning. *Id.* A vague reference to the "evidence of record" does not suffice. Regrettably, the Court "cannot simply presume that the ALJ applied the correct legal standards in considering" the agency physician's findings. *Watkins*, 350 F.3d 1297, 1301 (10th Cir. 2003).

### IV. CONCLUSION

Due to the ALJ's failure to appropriately weigh and discuss the agency supplied evidence, as well as his failure to sufficiently consider Dr. Sadziene-Bessinger's opinions and the associated medical records, the Court is unable to "assess whether relevant evidence adequately supports the ALJ's conclusion…and whether he applied the correct legal standards to arrive at that conclusion." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Consequently, the Court will reverse the Commissioner's decision and remand for further proceedings consistent with this opinion.

On remand, the Commissioner is directed to properly weigh and explain the medical evidence provided by Dr. Sadziene-Bessinger and the state agency consultants. And, because the weight afforded to this evidence will have implications for the remaining evidence, the Commissioner is also directed to reevaluate Plaintiff's testimony and PA Limback's opinion statements.

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 16) is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that this matter is **REMANDED** to the Commissioner for further proceedings consistent with this order.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE